U.S. COURTS

MAR 2 9 2010

Rcvd____ Filed____ Time 2:35
ELIZABETH A. SMITH
CLERK, DISTRICT OF IDAHO

1  Raymond N. Chace Jr.
   1302 N. Main Street
2  Meridian, ID 83642
   (208) 884-5437
3  Plaintiff Appearing Pro Per

4              UNITED STATES DISTRICT COURT
5                   DISTRICT OF IDAHO

6  RAYMOND N. CHACE JR., An Individual, )     Case No.  CV 09-413-E-CWD
                                        )
7              Plaintiff,               )
                                        )   **PLAINTIFF'S REPLY TO**
8          v.                           )   **DEFENDANTS' MOTION TO**
                                        )   **DISMISS OR, IN THE**
9  M&T MORTGAGE CORPORATION, and )        **ALTERNATIVE, MOTION FOR A**
   M&T BANK (nominal Defendant) and )    **MORE DEFINITE STATEMENT**
10 QUALITY LOAN SERVICE                 )
   CORPORATION, All Foreign Corporations )
11 Doing Business in the State of Idaho, DOES )
   and ROES 1-10.                       )
12                                      )
                                        )
13             Defendant.               )
   ---------------------------------------------

14

15     COMES NOW the Plaintiff and Replies to Defendants' Motion to Dismiss or, in the

16 Alternative, Motion for More Definite Statement.

17     The herein Plaintiff restates his Claim for Relief as stated in his original Complaint against

18 the Defendants, and each of them, stemming from the purchase, and subsequent foreclosure, of

19 real estate described and located in Meridian City, Ada County, Idaho, as follows:

20                          JURISDICTION

21              (UNITED STATES DISTRICT - DIVERSITY)

22

23                                I.

24     Plaintiff, RAYMOND N. CHACE JR., an individual, is, and at all times mentioned herein,

25 residing in Ada County, Idaho.

**Plaintiff's Reply to Defendants' Motion, Page 1**

II.

Defendant, M&T MORTGAGE CORPORATION, and M&T BANK, and QUALITY LOAN SERVICE CORPORATION, is, and at all times mentioned herein, are, or were, foreign corporations doing business in the state of Idaho.

III.

Defendant, DOES and ROES 1-10 are unknown at this time a may be participants unknown to the Plaintiff at the time of filing, and by name, are doing business in the state of Idaho.

IV.

The dollar amount of the dispute is in excess of $75,000, and that the herein dispute between the Plaintiff and Defendant is under the jurisdiction of United State District insofar that it is a diversity case pursuant to 28 U.S.C. § 1332.

## FIRST CAUSE OF ACTION

## (BREACH OF CONTRACT)

In Plaintiff's Reply to Defendants' Motion for a More Definite Statement, Plaintiff restates his Claim for **Breach of Contract** for a Loan Modification by Defendants' M&T BANK and / or M&T MORTGAGE CORPORATION as follows:

V.

Allegations I. - IV. are hereby incorporated into this Cause of Action.

IV.

On or about August, 2006, Plaintiff entered into contract with the Defendant M&T MORTGAGE CORPORATION to render purchase of real property located at 1620 Lauderhill Way, Meridian, ID 83646, more particularly described as:

Lot 2 in Block 2 of CHERRY LANE VILLAGE NO. 1 SUBDIVISION, according to the official plat thereof, filed in Book 44 of Plats at Pages(s) 3537

**Plaintiff's Reply to Defendants' Motion, Page 2**

through 3539, EXCEPT that portion deeded to Ada County Highway District in Warranty Deed recorded 15 April 1994, Instrument No. 94035100, official records of Ada County Idaho.

VII.

On or about August, 2006, Defendant M&T BANK MORTGAGE CORPORATION applied or otherwise transferred funds or servicing rights to Defendant M&T BANK.

VIII.

On or about November, 2008, Defendant M&T BANK placed the account into collections and foreclosure.

IX.

On or about January, 2009, Plaintiff demanded an accounting of Defendant M&T BANK's and Defendant M&T MORTGAGE CORPORATION's account servicing by Qualified Written Request pursuant to RESPA § 6 (Real Estate Settlement Procedures Act).

X.

That said request for account servicing went unanswered and unheeded by either Defendant.

XI.

On or about May, 2009, Plaintiff entered into a loan loss mitigation program with the Defendant M&T BANK and Defendant M&T MORTGAGE CORPORATION postponing aforementioned foreclosure sale.

XII.

On or about June, 2009, Plaintiff entered into a rental agreement with Tenants relying upon Defendant M&T BANK's and Defendant M&T MORTGAGE CORPORATION's conveyance of loan terms from the loss mitigation program.

Plaintiff's Reply to Defendants' Motion, Page 3

XIII.

On or about 6 August 2009,  Defendant M&T BANK and Defendant M&T MORTGAGE CORPORATION returned funds to Plaintiff dated 6 August 2009 from the agreed upon payment amount as "Payment Returned," no other reason given.

XIV.

On or about the week (or weeks of) 3 August 2009 to 14 August 2009, Defendant M&T BANK and Defendant M&T MORTGAGE CORPORATION sold the account into foreclosure with Defendant QUALITY LOAN SERVICE CORPORATION.

XV.

On 14 August 2009 Defendant QUALITY LOAN SERVICE, through Trustee's Deed from Pioneer Lender Services, LLC, An Idaho Limited Liability Company sold the subject property through foreclosure.  On or about 19 August 2009, Plaintiff became aware of a real estate agent of Coldwell Banker demanding an accounting of Plaintiff intentions for removal from the subject property.

XVI.

Defendant M&T BANK and / or Defendant M&T MORTGAGE CORPORATION has caused the subject property to be "real estate owned" as no bids were place thereupon at foreclosure sale.

XVII.

That Plaintiff is still awaiting written confirmation of oral conveyance with Defendant M&T BANK and Defendant M&T MORTGAGE CORPORATION of said loan modification as promised.

**Plaintiff's Reply to Defendants' Motion, Page 4**

1

## XVIII.

2

That Defendant QUALITY LOAN SERVICE CORPORATION sold the property

3  without notice to Plaintiff in the early week(s) of August 2009.

4

## XIX.

5

Defendants, and each of them, have not accepted any payments attempted from Plaintiff

6  since November, 2009.

7

## SECOND CAUSE OF ACTION

8

## (MISREPRESENTATION and FRAUD)

9

10  In Plaintiff's Reply to Defendants' Motion for a More Definite Statement, Plaintiff restates his

Claim for **Misrepresentation and Fraud** in connection with the Loan Modification by

11

Defendants' M&T BANK and / or M&T MORTGAGE CORPORATION. The Claim is based

12  on the basis that the Plaintiff is informed and believes that Defendants M&T BANK and M&T

13  MORTGAGE CORPORATION interchangeably securitizes, packages and sells loans in a manner

14  that is intentionally conducted in a way where the Defendants can claim they have no authority to

15  enter into loan modification contracts "without investor approval." These loan modifications are,

16  therefore, rarely, if ever, modified pursuant to the Defendants' promises upon which this Plaintiff

fully relied. The information provided in Plaintiff's Complaint was researched and garnered not

17  from a random search of the Internet, as the Defendants' allude in their Motion, but from filings

18  around the country as gleaned from the legal information source most Attorneys at Law use,

19  namely, LexisNexis®:

20

## XX.

21

Allegations I. - XIX. are hereby incorporated into this Cause of Action.

22

23

## XXI.

24  Defendants M&T BANK and Defendant M&T MORTGAGE CORPORATION

SERVICES and Defendant QUALITY LOAN SERVICE CORPORATION has committed a

25  fraud against the Plaintiff upon discovery that the Defendant M&T MORTGAGE

**Plaintiff's Reply to Defendants' Motion, Page 5**

CORPORATION, the purported "lender" or "note holder" (herein now known as solely the "loan servicer") has engaged in a pattern of fraud and deception across the country and the state of Idaho in attempting to foreclose residential properties after agreeing to loan modifications. The Defendants, and each of them, have egregiously, with ongoing and with far reaching fraudulent schemes for improper use of Plaintiff's identity, have committed against Plaintiff fraud in the inducement, fraud in the execution, usury, and breaches of contractual and fiduciary obligations as Mortgagee or "Trustee" on the Deed of Trust, "Mortgage Brokers," "Loan Originators," "Loan Seller", "Mortgage Aggregator," "Trustee of Pooled Assets", "Trustee or officers of Structured Investment Vehicle", "Investment Banker," "Trustee of Special Purpose Vehicle / Issuer of Certificates of 'Asset-backed Certificates,'" "Seller of 'Asset-Backed' Certificates (shares or bonds)," "Special Servicer" and Trustee, respectively, of certain mortgage loans pooled together in a trust fund.

## XXII.

The Defendants, and each of them, are participants in the securitization scheme described herein have devised business plans to reap millions of dollars in profits at the expense of Plaintiff and other investors in certain trust funds.

## XXIII.

In addition to seeking compensatory, consequential and other damages, Plaintiff seeks declaratory relief as to what, if any party, entity, or individual or group thereof is the owner of the promissory note executed at the time of the loan closing, and whether the Deed of Trust (Mortgage) secures any obligation of the Plaintiff, and a Mandatory Injunction requiring reconveyance of the subject property to the Plaintiff, or in the alternative, a Final Judgment granting Plaintiff Quiet Title in the subject property.

## XXIV.

Plaintiff is the nominal payor on the subject promissory Note. The Loan Seller is a financial institution that was paid a fee to pose as a residential mortgage lender, when in fact the source of loan funds and the actual lender (Investors in Certificates) and underwriter (Mortgage Aggregator and Investment Banker) were other parties whose identities and receipt of fees and

profits were withheld from Plaintiff at Closing and despite numerous requests continue to be withheld from Plaintiff by the Defendants contrary to the requirements of Federal Law and applicable State Law.

### XXV.

Unknown to Plaintiff, the Loan Seller, acting as principal in its relationships with the "independent appraiser" of the property and the mortgage broker and mortgage originator, induced the Plaintiff into a transaction that did not and could not meet normal underwriting standards for a residential mortgage. The Loan Seller posed as a conventional mortgage lender thus leading Plaintiff to reasonably believe that the Loan Seller, the mortgage broker, and the loan originator had an interest in the success( repayment of the loan) of the transaction that Plaintiff was induced to believe was being executed at the time of the "closing" of the subject loan transaction.

### XXVI.

That the Loan Seller, mortgage broker, appraiser, loan originator, title agent, escrow agent and Trustee on the Deed of Trust, had no financial stake (i.e., liability) in the transaction and no interest other than obtaining Plaintiff's signature on a "loan" that could never be repaid, contrary to representations and assurances from the conspiring participants in this fraudulent scheme. In fact, the "Appraisal" was intentionally and knowingly inflated along with other loan data to justify the closing of the "loan transaction."

### XXVII.

That Plaintiff relied upon the due diligence of the apparent "Lender" (also known as the Loan Seller) in executing, and accepting, the closing documents. In fact, no "lender" was involved in the closing in the sense of an entity performing due diligence and evaluation pursuant to national standards for underwriting and evaluating risk of loaning money in a residential loan closing.

### XXVIII.

Plaintiff's Reply to Defendants' Motion, Page 7

1   No bank or other financial institution actually performing under the standards, rules and
2   regulations governing such institutions was the "lender" which is the basis for Plaintiff's cause of
3   action for usury, to wit: that the inflated appraisal added an undisclosed cost to the loan which
    when added to the other terms, disclosed and undisclosed, and amortized over the real expected
4   life of the "loan" exceeds the limits set by the State legislature for usury and is not subject to
5   exemption because the presence of a financial institution in the transaction was a ruse in which the
6   form of the transaction covered over and mislead the Plaintiff as to the real parties in interest and
7   the fees generated by the production of the subject "loan transaction."

8                                        XXIX.

9       Defendants, and each of them, their purpose to solely collect fees, rebates, kickbacks and
10  profits never disclosed to Plaintiff and have only recently been discovered by Plaintiff through
11  discovery and consultation with experts in securitization of residential mortgage loans, and
12  diligent research including the filings of some parties with the Securities and Exchange
    Commission which disclose the normal manner of operating this fraudulent scheme.
13

14                                       XXX.

15      That the Defendant Loan Seller was named as the Payee on the subject promissory note
16  and the beneficiary under the mortgage terms allegedly securing the performance under the
17  subject note. The "Trustee" was named as the Trustee on the Deed of Trust executed at the time
    of the alleged "closing" of the "loan transaction."  In accordance with Idaho State law, the Deed
18  and terms of security were recorded in the official county records of Ada.
19

20                                       XXXI.

21      Notwithstanding the above, and without the knowledge of the Plaintiff, the Loan Seller
22  had entered into Assignment and Assumption Agreements with one or more parties and Pooling
    and Service Agreements with one or more parties including but not limited to the mortgage
23  aggregator prior to or contemporaneously with the "Closing" of the subject "loan transaction."
24  Under the terms of these agreements, the Loan Seller received a sum of money, usually on
25

**Plaintiff's Reply to Defendants' Motion, Page 8**

receiving an application for a loan equal to the gross amount of the loan sought by Plaintiff plus a fee of 2.5% or more which was allocated to the subject loan transaction.

### XXXII.

That contrary to the documents presented before and during the "closing" of the "loan transaction" the Loan Seller was neither the source of funding nor the "Lender." Thus at the time of recording, the source of funding and the "Lender" was a different entity than the nominal mortgagee or beneficiary under the deed of trust and was neither named nor disclosed in any fashion. The security for the "loan" thus secured an obligation that had been paid in full by a third party. Said third party(ies) was acting as a financial institution or "Lender" without even having been chartered or registered to do so despite regulations to the contrary from laws and rules of State or Federal authorities and/or agencies.

### XXXIII.

That some form of documentation represented by the Loan Seller to the Mortgage Aggregator was presented before or contemporaneously with the "closing" of the loan" transaction. In some cases the documentation included actual copies of the documents presented at "Closing." In most cases it consisted of either forged blank notes or vague descriptions of the content of the notes that were placed into the pool of assets that would be "securitized." Plaintiff has discovered numerous cases in which the "loan closing" either did not take place at all or included documentation substantially different than the original offer and acceptance and substantially different than what could have been reported to the Mortgage Aggregator prior to the "closing." Plaintiff has discovered numerous cases in which foreclosure has proceeded despite the fact that no loan closing was ever consummated, no papers were ever signed, or the loans were properly rescinded properly under law.

### XXXIV.

That Plaintiff does not know what version of documentation was presented to the Mortgage Aggregator and if the Mortgage Aggregator took one or more varying descriptions of the alleged "loan documents" into more than one pool of assets which was eventually sold for the purpose of securitizing the assets of the pool which included the subject loan transaction either

**Plaintiff's Reply to Defendants' Motion, Page 9**

once or more than once. Plaintiff has requested such information numerous times only to be met with complete silence and defiance or obfuscation from the Defendants.

### XXXV.

There is no assignment of the subject mortgage in the county records, but there is a non-recorded Pooling and Services" Agreement and a non-recorded Assignment and Assumption Agreement which appears to substitute the Trustee over the pooled assets for the nominal Trustee in the Deed of Trust. The powers of this second Trustee were in turn transferred to either a Trustee for a Special Investment Vehicle (which performed the accounting and reporting of the pool assets) or to an investment bank Collateral Debt Obligation manager whose department performed the accounting and reporting of the pool assets. The reporting of the pool assets consisted principally of descriptions of the notes "signed" by borrowers and limited descriptions of the general terms of the note such that the note appeared to be more valuable than the initial terms of payment by the "borrower."

### XXXVI.

The note from the subject "loan transaction" was eventually allocated into a new corporation (Special Purpose Vehicle) formed for the express purpose of holding the pooled assets under certain terms. The terms included the allocation of payments from one note to pay any deficiency in payment of another note in unrelated "loan transactions" contrary to the terms of each such note which required payments to be allocated to the principal, interest, escrow and fees associated with only that specific "loan transaction." Whether such "deficiency" was caused by the difference between the higher general terms of description of the note or the lower actual payment requirements from the "borrower" is not known, despite numerous requests for accounting and the refusal of Defendants to provide any such information.

### XXXVII.

The Investment Banking firm arranged through payment for a false inflated appraisal of the certificates and/or issuer of the certificates that would be sold to investors in much the same way as it had procured the false appraisal of the property that "secured" the "loan transaction." In addition, insurance was purchased from proceeds of this transaction, credit default swaps were

1    purchased from proceeds of this transaction, the investors investments were "oversold" to create
2    a reserve pool from which the SPV could pay deficiencies in payments, and the SPV created
3    cross-collateralization agreements and overcollateralization of the pool assets to assure payments
4    to the investors, thus creating co-obligors on the payment stream due from the Plaintiff on the
     subject "loan transaction."

5

6                                              XXXVIII.

7        The pool assets, including the Plaintiff's subject "loan transaction " were pledged
8    completely to the owners of the "asset-backed securities." All the certificates were then
9    transferred to a Seller who in turn sold the certificates in varying denominations, each of which
10   had slightly different terms depending upon which segment of the pool (tranche) secured the
     investment.

11                                             XXXVIII.

12       If there is a holder in due course of the Plaintiff's note arising from the subject "loan
13   transaction" it is the investors who purchased said securities (certificates). Some of said securities
14   are held by the original purchaser thereof, others were sold at weekly auction markets, others
15   were paid by re-sales of property that was "secured", others were paid from prepayments, others
16   were paid by sale at full or partial price to the investment bank that originated the entire
17   transaction, some of which might be held by the Federal Reserve as nonrecourse collateral, and
18   others might have been paid by one or more of the insurance, credit default swaps, cross
19   guarantees or cross collateralization of the segment of the pool that secured the relevant investor
     who owned certificates backed by a pool of assets that included the subject "loan transaction."

20                                             XXXIX.

21       The Defendants have no knowledge nor have they, and each of them, made any effort to
22   determine whether the putative holders in due course have been paid in whole or in part.  It can
23   only be said with certainty that these Defendants seek to enforce loan documents for which they
24   have already been paid in full plus illegal fees for participating in an illegal scheme.  Defendants
25   now demand ownership of the property in addition to the receipt of payment in full long before

**Plaintiff's Reply to Defendants' Motion, Page 11**

any delinquency or default even allegedly occurred, while participating in a loan modification offer to the Plaintiff.

XL.

The Defendants, and each of them, to maintain legal standing in connection with the subject loan transaction, are required to show the entire chain of title of the note and the entire chain of title of the mortgage. They have refused to do this despite numerous requests, leading Plaintiff to concluded that the Defendants cannot produce such evidence of a complete chain of title or are intentionally withholding the information that would show breaks in such chain.

XLI.

The Plaintiff is left in the position of being in an adversary proceeding with ghosts. While these Defendants have informally offered or considered providing indemnification for any third party claims, the fact remains that any relief awarded these defendants, any standing allowed to these defendants would expose the Plaintiff to multiple claims and suits from an unknown number of parties and entities that all claim, possibly correctly, to the holders in due course. Any grant of a certificate of title to an entity other than Plaintiff or the nominal mortgagee creates an incurable defect in title.

XLII.

There is no recording of any document in the county records which predates the Defendants' attempt to initiate foreclosure and / or eviction or which would authorize them to proceed.

### THIRD CAUSE OF ACTION

### (FAILURE TO DISCLOSE and ABUSE OF PROCESS)

In Plaintiff's Reply to Defendants' Motion for a More Definite Statement, Plaintiff restates his Claim for Defendants' **Failure to Disclose and Abuse of Process** in connection with the Loan Modification by Defendants' M&T BANK and / or M&T MORTGAGE CORPORATION. The Claim is based on the basis that the Plaintiff is further informed and believes that Defendants

**Plaintiff's Reply to Defendants' Motion, Page 12**

M&T BANK and M&T MORTGAGE CORPORATION uses pass through certificates and guarantees to sell loans, which includes the Plaintiff's loan, in a manner that is also intentionally conducted in a way where the Plaintiff is not credited with payments made on his account by bond, insurance, rebate or other fees enumerated below in Paragraphs XLIII - XLVIII of Plaintiff's Complaint.  Further, this Third Cause of Action claims that the Defendants have no authority to enter into a foreclosure contract with a trustee "without investor approval," which was never filed pursuant to Idaho Code at the Ada County Recorder's office.  Defendants, and each of them, have no claim for relief under the auspices of the non-judicial foreclosure they executed against the property because they failed to comply with IC §§ 15 45-1502 - 45-1515:

## XLIII.

Allegations I. - XLII. are hereby incorporated into this Cause of Action.

## XLIV.

That Defendant M&T BANK and Defendant M&T MORTGAGE CORPORATION use Mortgage backed Securities (MBS) Certificates which are "pass through Certificates," where the Trust has elected to be treated as a Real Estate Mortgage Investment Conduit ("REMIC") to enjoy the tax exempt status allowed under 15 U.S.C. §§ 806(A-G):

A.     REMIC regulations impose very strict limitations as to the nature of the investments a REMIC trust may make (i.e. "permitted investments") and transactions which it may not undertake (i.e. "prohibited transactions").

B.     Any violation of REMIC regulations has significant tax implications for the Trust, as well as all Certificate holders. For example, any income realized by the Trust from a "prohibited transaction" is taxed at 100%.  The REMIC regulations also provide that any entity that causes the REMIC regulations to be violated is liable to the Trust and the Certificate holders for the entire amount of the tax.

C.     Only income from "qualified mortgages" and "permitted investments" may enter a REMIC trust.

D.     A "qualified mortgage" is an obligation (i.e. mortgage) which is principally secured by an interest in real property which (1) was transferred to the Trust on the startup date, (2) was

purchased by the REMIC Trust within 3 months after the startup date or (3) any qualified replacement mortgage.

E.      Permitted investments are limited to:  (1) Cash Flow Investments (i.e. temporary investment where the Trust holds money it has received from qualified mortgages pending distribution to the Certificate holders); (2) Qualified Reserve Assets (i.e. any intangible property which is held for investment and is part of a reasonably required reserve to provide for full payment of expenses of the REMIC or amounts due on regular interests in the event of defaults on qualified mortgages or lower than expected returns on cash flow investments.  (These Investments are for very defined purposes and are to be passive in nature, and must be "reasonably required;" (3) Liquidation Proceeds from "foreclosed property" which is acquired in connection with the default or imminent default of a "qualified mortgage" held by the Trust.

XLV.

That, for Defendant M&T BANK and Defendant M&T MORTGAGE CORPORATION to maintain the REMIC status, the Trustee and the Servicers must ensure that the REMIC receives no income from any asset that is not a "Qualified Mortgage" or a "Permitted Investment" as defined in 26 U.S.C. § 806 F(a)(2)(B).  Whereas:

A.      Prohibited Transactions include the disposition of a qualified mortgage (except where the disposition is "incident to" the foreclosure, default, or imminent default of the mortgage); or the receipt of any income from an asset that is not a Qualified Mortgage or a Permitted Investment. 26 U.S.C. § 860F(a)(2)(B).

B.      Prohibited Transactions are taxed in an amount 100% of the REMIC's net income from such prohibited transaction. 26 U.S.C. § 860F(a)(1).

C.      Contributions of any "property" – e.g., cash, mortgages, etc. – made to the REMIC are taxed at 100% of the contribution, except for the four following exceptions: (1) Contributions to facilitate a "clean up call" [i.e. the redemption of a class of (2) regular interest, when by reason of prior payments with respect to those interests (3) the administrative costs associated with servicing that class outweigh the benefits (4) of maintaining the class]. Reg. § 1.860G-2(j)(1).

D.      Any cash payment in the nature of a guarantee, such as payments to the REMIC. Any violation of REMIC regulations will defeat the privileged tax status and will subject the REMIC to 100% taxation, plus penalties and interest. These taxes and penalties are ultimately borne by the Certificate holders. under a surety bond, letter of credit or insurance policy.

E.      Any cash contribution during the three month period after the startup day, and any cash contribution to a qualified reserve fund made by a holder of a residual interest.

### XLVI.

That, on a monthly basis, the Investment Banking firm and/or its agents, servants or employees compiled, individually and in concert, oversaw and approved all the information contained in the Distribution Reports and electronically sent same to certain parties:

A.      Based upon research performed by experts on behalf of the Plaintiff. the data regarding the number of bankruptcies, aggregate Special Servicing Fees, and aggregate Trust Fund Expenses was routinely incomplete, false, and/or misleading.

B.      Further said report intentionally obfuscated the illegal allocation of payments, the failure to disclose payments, and the effect on the alleged obligation of the Plaintiff, to wit: despite numerous insurance products, credit default swaps, cross collateralization, over collateralization and polling at multiple levels, money received by some or all of these Defendants under the pretense of it being a "Mortgage Payment" was in fact retained, reserved, applied to non-performing loans to make them appear as though They were performing loans, or paid as fees to the enterprise Defendants described in this complaint.

C.      Based upon the failure of the Defendants to respond, Plaintiff has every reason to believe that the party receiving the payments (M&T Bank) is neither the holder in due course of the note nor the owner of any rights under the mortgage provisions of the deed of trust.

1.      Plaintiff has every reason to believe that her payments are not being forwarded to the holder in due course of the note nor to any other authorized party.

2.      Plaintiff is in jeopardy, to wit: the true holder in due course and potentially dozens or even thousands of third parties could come forward claiming an unsatisfied

interest in the promissory note and may or may not be subject to Plaintiff's various affirmative defenses and counterclaims.

3.     That research has revealed that in various states, such security interests are being purchased by speculators who then seek to enforce said liability, preventing the Plaintiff from claiming the most basic defense, to wit: payment exactly as required by the terms of the note which was cashed by the receiving party (M&T) apparently without authority to do so.

4.     Defendants have failed and refused to reveal the true source of funds for the alleged loan transaction, further preventing Plaintiff's right of three-day rescission under the Truth in Lending Act because the real lender has not been revealed and therefore the Notice of Rescission by the Plaintiff has no authorized addressee.

5.     That the "loan" was table-funded without a disclosed source of funds and without disclosing tens of thousands of dollars in fees all contrary to the requirements of state and federal law was withheld from Plaintiff by Defendants and continues to be withheld by them. But for the expenditure of time, money and effort on research, Plaintiff would not have discovered the various deceptions of the Defendants at the alleged loan closing.

6.     Plaintiff alleges the closing was an "alleged loan closing" because in fact it was part of an undisclosed hidden illegal scheme to issue unregulated securities (mortgage backed securities) based upon the negotiation of nonnegotiable notes, the terms of which had been changed, altered, amended or modified AFTER the execution by the Plaintiff.

7.     Defendants then purported to "negotiate" the note by adding terms which allowed the proceeds of the note to be allocated to the payment of the notes of other borrowers and adding co-obligors as aforesaid through insurance, guarantees, additional collateralization and reserves all of which were undisclosed, as aforesaid.

a.     The note was not negotiable because it was no longer an unconditional promise to pay by the original borrower. The terms had changed, adding conditions to payment that were inherent in the "securitization process" that Defendants fraudulently promoted.

8.     Said "negotiation" of Plaintiff's note was in actuality the theft of his identity to hide the vast number of "toxic waste mortgages, notes and obligations that the enterprise defendants were selling up through their "securitization" chain.

a.     The result of this was that notes from other borrowers wherein there was virtually no possibility of performance were disguised as being of the same class as Plaintiff's Note.

b.     These disguised notes carried interest rates sometimes as high as 16.5% which under disguise were then sold to unsuspecting investors as triple AAA investments providing the investor with approximately 6-8% return.

c.     By selling virtually worthless "negotiable" paper at par or in the case of toxic waste paper, 2-5 times par, the enterprise defendant reaped profits in the hundreds of thousands of dollars on each such "transaction." For example, if the toxic waste paper under cover of Plaintiff's credit rating and identity was sold at an investment return of 6% and the mortgage note carried a principal balance of $300,000, the enterprise Defendants sold the "investment" certificates on that "loan" for approximately $740,000 and thus received $440,000 in illegal, fraudulent and undisclosed "profits" or "fees" in a $300,000 mortgage transaction.

d.     Thus the economics of mortgage origination changed, to wit: the worse the loan, the more money the enterprise defendants made as long as there were enough people, like Plaintiff, whose identify was used to hide the high volume (and high profit) of toxic waste loans.

e.     Thus in the financial interest of the enterprise Defendants to create unrealistic and false market expectations, deceiving the public as a whole in specified geographical areas of the country that were identified by these enterprise Defendants as targets.

f.     That since these illegal profits were not disclosed, the Plaintiff is entitled to an accounting and a pro rate share of the profits obtained by the illegal, improper and undisclosed use of his name, his credit rating and his identity.

g.       That Plaintiff's share of said profits exceed $1 million.

### XLVII.

That, the Distribution Reports are accurately reflecting the "financial health of the trust," and provide Certificate holders with important data such as the number of loans in bankruptcy, the aggregate amount of special servicing fees, and the aggregate amounts of trust fund expenses. Each and every one of these categories is essential for to assess its profit and loss potential in the REMIC entity. Furthermore, this data is used by bond rating agencies to assess the value of the Certificates.

### XLVIII.

That, based upon the filings and information of the Plaintiff it appears that no accurate accounting has ever been presented to anyone and that therefore the identity and status of any putative holder in due course is completely shrouded in secrecy enforced by these Defendants, their agents, servants and employs.

A.       Unreported repurchases of certificates or classes of certificates would and did result in a profit to the REMIC that went unreported, and which was not credited to Borrower where the repurchase was, as was usually the case, the far less than the original investment.

B.       Where the Plaintiff would never have entered into a transaction in which the true nature of this scheme was revealed, any profits, refunds, rebates, fees, points, costs or other income or gain should be credited on some basis to said borrowers including Plaintiff herein.

## FOURTH CAUSE OF ACTION

## (VIOLATIONS OF REAL ESTATE SETTLEMENT PROCEDURE ACT

## and TRUTH IN LENDING)

In Plaintiff's Reply to Defendants' Motion for a More Definite Statement, Plaintiff restates his Claim for Defendants' **Violations of Real Estate Settlement Procedure Act and Truth in Lending Act** in connection with the above handling of Plaintiff's loan.  By virtue of Plaintiff's the Claim is based on the basis that the Plaintiff is damaged because Defendants M&T BANK and

**Plaintiff's Reply to Defendants' Motion, Page 18**

M&T MORTGAGE CORPORATION uses the manner set forth in the above Paragraphs to conduct lending activity. The Defendants M&T BANK and M&T MORTGAGE CORPORATION are subject to the following requirements with which they have failed comply under the law:

XLIX.

Allegations I. - XLVIII. are hereby incorporated into this Cause of Action.

L.

As mortgage lenders, Defendants are subject to the provisions of the Real Estate Settlement Procedures Act ("RESPA"), 12 USC § 2601 et seq. In violation of 12 USC §2607 and in connection with the mortgage loan to Plaintiff, Defendants accepted charges for the rendering of real estate services which were in fact charges for other than services actually performed. As a result of the Defendants' violations of RESPA, Defendants are liable to Plaintiff in an amount equal to three (3) times the amount of charges paid by Plaintiff for "settlement services" pursuant to 12 USC § 2607 (d)(2).

LI.

That, by the false and misleading representations and material omissions of the Defendants as to the true nature of the mortgage loan actually being processed, which said Defendants had actual knowledge was in direct conflict with the original Uniform Residential Loan Application, early TIL, and Plaintiff's stated intentions and directions to said Defendants at the time of original application for the loan, fraudulently caused Plaintiff to execute predatory loan documents.

XLII.

That at no time whatsoever did Defendants ever advise Plaintiff (nor, as far as Plaintiff can determine, any "investor" in certificates of mortgage-backed securities) that:

A.      The mortgage loan being processed was not in his best interest;

B.     The terms of the mortgage loan being processed were less favorable than the fixed-rate loan which Defendant previously advised Plaintiff that they qualified for;

C.     That the mortgage loan was an inter-temporal transaction (transaction where terms, risks, or provisions at the commencement of the transaction differ at a later time) on which Plaintiff was providing cover for Defendants' illegal activities.

D.     That Plaintiff would likely be placed in a position of default, foreclosure, and deficiency judgment regardless of whether she met her loan obligations once the true lender or true holder(s) in due course appeared;

E.     That the originating "lender", that being Defendant M&T BANK, had no intention of retaining ownership interest in the mortgage loan or fully servicing same and in fact may have and probable had already presold the loan, prior to closing, to a third party mortgage aggregator pursuant to previously executed documentation (Assumption and assignment Agreement, Pooling Services Agreement, etc. all executed prior to Plaintiff's "loan Closing."

F.     That the mortgage loan was actually intended to be repeatedly sold and assigned to multiple third parties, including one or more mortgage aggregators and investment bankers (including but not limited to Defendants DOES 1-10), for the ultimate purpose of bundling the Plaintiff's mortgage with hundreds or perhaps thousands of others as part of a companion, support, or other tranche in connection with the creation of a REMIC security known as a Collateralized Mortgage Obligation ("CMO"), also known as a "mortgage-backed security" to be sold by a securities firm (and which in fact ended up as collateral for Asset-Backed Securities Certificates, created the same year as the closing);

G.     That the mortgage instrument and Promissory Note may be sold, transferred, or assigned separately to separate third parties so that the later "holder" of the Promissory Note may not be in privity with or have the legal right to foreclose in the event of default;

H.     That in connection with the multiple down-line resale and assignment of the mortgage and Promissory Note that assignees or purchasers of the Note may make "pay-downs" against the Note which may effect the true amount owed by the Plaintiff on the Note;

**Plaintiff's Reply to Defendants' Motion, Page 20**

I.    That a successive assignee or purchaser of the Note and Mortgage may not, upon assignment or purchase, unilaterally impose property insurance requirements different from those imposed as a condition of the original loan (also known as prohibition against increased forced-placed coverage) without the Plaintiff's prior notice and consent.

LIII.

That as a result of the closing and in connection therewith, Defendants placed the Plaintiff into a pool of a sub-prime adjustable rate mortgage programs or sub-prime fixed investment mortgage programs, with Defendants intentionally misleading Plaintiff and the other borrowers and engaging in material omissions by failing to disclose to Plaintiff and other borrowers the fact that the nature of the mortgage loan applications had been materially changed without Plaintiff's knowledge or consent, and that Plaintiff was being placed into a pool where the usual loan was an adjustable rate mortgage program or fixed investment mortgage program despite borrowers not being fully qualified for such a program.

LIV.

That prior to the closing, Defendant M&T BANK failed to provide to Plaintiff the preliminary disclosures required by the Truth-in-lending Act pursuant to 12 CFR (also known as and referred to herein as "Regulation Z) § 226.17 and 226.18, and failed to provide the preliminary disclosures required by the Real Estate Settlement Procedures Act ("RESPA") pursuant to 24 FR § 3500.6 and 3500.7, otherwise known as the GFE.

LV.

Defendant M&T BANK also intentionally failed and / or refused to provide Plaintiff with various disclosures which would indicate to the Plaintiff that the consumer credit contract entered into was void, illegal, and predatory in nature due in part to the fact that the final TIL showed a "fixed rate" schedule of payments, but did not provide the proper disclosures of the actual contractually-due amounts and rates.

LVI.

Defendant M&T BANK failed and / or refused to provide a HUD-1 Settlement Statement at the closing which reflected the true cost of the consumer credit transaction. As Defendants, and each of them, failed to provide an accurate GFE or Itemization of Amount Financed ("IOAF"), there was no disclosure of a Yield Spread Premium ("YSP", which is required to be disclosed by the Truth-in-lending Act) and thus no disclosure of the true cost of the loan.

LVII.

As a direct and proximate result of these failures to disclose as required by the Truth-In-Lending Act, Defendant M&T BANK received a YSP in a substantial amount of without preliminary disclosure, which is a *per se* violation of 12 CFR § 226.4(a), 226.17 and 226.18(d) and (c)(1)(iii). The YSP raised the interest rate which was completely unknown to or approved by the Plaintiff, as he did not received the required GFE or IOAF.

LVIII.

That the completely undisclosed YSP was not disclosed by Defendant in their broker contract, which contract was blank in the area as to fees to be paid to Defendant. This is an illegal kickback in violation of 12 USC § 2607 as well as State law which gives rise to all damages claims for all combined broker fees, costs, and attorneys' fees.

LVIX.

That the Amount Financed within the TIL is also understated which is a material violation of 12 CFR § 226.17 and 226.18, in addition to 15 USC § 1602(u), as the Amount Financed must be completely accurate with no tolerance.

LVX.

That the Defendants, and each of them, were under numerous legal obligations as fiduciaries and had the responsibility for overseeing the purported loan consummation to insure

that the consummation was legal, proper, and that Plaintiff received all legally required disclosures pursuant to the Truth-in-lending Act and RESPA both before and after the closing.

## LXI.

Plaintiff reasonably relied upon the Defendants to insure that the consumer credit transaction was legal, proper, and complied with all applicable laws, rules, and Regulations.

## LXII.

Defendants regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four (4) installments and was initially payable to the person the subject of the transaction, rendering Defendants "creditors" within the meaning of the Truth-in-lending Act, 15 U.S.C. §. 1602(f) and Regulation Z § 226.2(a)(17).

## LXIII.

At the closing of the subject "loan transaction", Plaintiff executed Promissory Notes and Security Agreements in favor of Defendants as aforesaid. These transactions, designated by Defendants as a Loan, extended consumer credit which was subject to a finance charge and which was initially payable to the Defendants.  As part of the consumer credit transaction the subject of the closing, Defendants retained a security interest in the subject property which was Plaintiff's principal residential dwelling.

## LXIV.

As part of the consumer credit transaction the subject of the closing, Defendants retained a security interest in the subject property which was Plaintiff's principal residential dwelling. Defendants engaged in a pattern and practice of defrauding Plaintiff in that, during the entire life of the mortgage loan, Defendants failed to properly credit payments made; incorrectly calculated interest on the accounts; and have failed to accurately debit fees. At all times material, Defendants had actual knowledge that the Plaintiff's accounts were not accurate but that Plaintiff would make

further payments based on Defendants' inaccurate accounts.  Plaintiff made payments based on the improper, inaccurate, and fraudulent representations as to Plaintiff's accounts.

## LXV.

As a direct and proximate result of the actions of the Defendants set forth above, Plaintiff overpaid in interest.  Defendants utilized the amounts known to the Defendants to be inaccurate to determine the amount allegedly due and owing for purposes of foreclosure.

## LXVI.

Defendants' violations were all material in nature under the Truth-in-lending Act.

## LXVII.

Said violations, in addition to the fact that Plaintiff did not properly receive Notices of Right to Cancel, constitute violations of 15 USC § 1635(a) and (b) and 12 CFR § 226.23(b), and are thus a legal basis for and legally extend Plaintiff's right to exercise the remedy of rescission.

## LXVIII.

Defendants assigned or attempted to assign the Note and mortgage to parties who did not take these instruments in good faith or without notice that the instruments were invalid or that Plaintiff had a claim in recoupment. Pursuant to UCC § 3, Defendants are not a holder in due course and is thus liable to Plaintiff, individually, jointly and severally.

## LXIX.

On information and belief, and given that the consumer credit transaction was an inter-temporal transaction with multiple assignments as part of an aggregation and the creation of a REMIC tranche itself a part of a predetermined and identifiable CMO, all Defendants shared in the illegal proceeds of the transaction; conspired with each other to defraud the Plaintiff out of the proceeds of the loan; acted in concert to wrongfully deprive the Plaintiff of his residence; acted in concert and conspiracy to essentially steal the Plaintiff home and / or convert the Plaintiff home

without providing Plaintiff reasonably equivalent value in exchange; and conducted an illegal enterprise within the meaning of federal and state statutes, more specifically alleged below.

LXX.

On information and belief, and given the volume of residential loan transactions solicited and processed by the Defendants, the Defendants have engaged in two or more instances of racketeering activity involving different victims but utilizing the same method, means, mode, operation, and enterprise with the same intended result.

FIFTH CAUSE OF ACTION

**(VIOLATIONS OF HOME OWNERSHIP EQUITY PROTECTION ACT)**

In Plaintiff's Reply to Defendants' Motion for a More Definite Statement, Plaintiff restates his Claim for Defendants' **Violations of Home Ownership and Equity Protection Act** in connection with the loan provided by Defendants' M&T BANK and M&T MORTGAGE CORPORATION. This Claim is based on the Defendants' actions alleged in Plaintiff's First through Fourth Causes of Action Against Defendants M&T BANK and M&T MORTGAGE CORPORATION, and in furtherance of Plaintiff's claim:

LXXI.

Allegations I. - LXX. are hereby incorporated into this Cause of Action.

LXXII.

In 1994, Congress enacted the Home Ownership Equity Protection Act ("HOEPA") which is codified at 15 USC § 1639 et seq. with the intention of protecting homeowners from predatory lending practices targeted at vulnerable consumers. HOEPA requires lenders to make certain defined disclosures and prohibits certain terms from being included in home loans. In the event of noncompliance, HOEPA imposes civil liability for rescission, and provides statutory and actual damages.

LXXIII.

Plaintiff is a "consumer" and each Defendant is a "creditor" as defined by HOEPA. In the mortgage loan transaction at issue here, Plaintiff were required to pay excessive fees, expenses, and costs which exceeded more than 10% of the amount financed.

### LXXIV.

Pursuant to HOEPA and specifically 15 USC sec. 1639(a)(1), each Defendant is required to make certain disclosures to the Plaintiff which are to be made conspicuously and in writing no later than three (3) days prior to the closing.

### LXXV.

In the transaction at issue, Defendants were required to make the following disclosure to Plaintiff by no later than three (3) days prior to said closing. To wit: "You are not required to complete this agreement merely because you have received these disclosures or have signed a loan application. If you obtain this loan, the lender will have a mortgage on your home. You could lose your home and any money you have put into it, if you do not meet your obligation under the loan."

### LXXVI.

Defendants violated HOEPA by numerous acts and material omissions, including but not limited to: Failing to make the foregoing disclosure in a conspicuous fashion; and, engaging in a pattern and practice of extending credit to Plaintiff without regard to their ability to repay in violation of 15 USC § 1639(h).

### LXXVII.

By virtue of the Defendants' multiple violations of HOEPA, Plaintiff has a legal right to rescind the consumer credit transaction the subject of this action pursuant to 15 USC § 1635. This Complaint is to be construed, for these purposes, as formal and public notice of Plaintiff's Notice of Rescission of the mortgage and note.

### LXXVIII.

Defendants further violated HOEPA by failing to make additional disclosures, including but not limited to Plaintiff not receiving the required disclosure of the right to rescind the transaction.

### LXXIX.

Defendants failed to provide Plaintiff an accurate TIL disclosure, the amount financed being understated. As a direct consequence of and in connection with Plaintiff's legal and lawful exercise of his right of rescission, the true "lender" is required, within twenty (20) days of this Notice of Rescission, to:  (a) desist from making any claims for finance charges in the transaction; (b) return all monies paid by Plaintiff in connection with the transaction to the Plaintiff; (c) satisfy all security interests, including mortgages, which were acquired in the Transaction.

### LXXX.

Upon the true "lenders" full performance of its obligations under HOEPA, Plaintiff shall tender all sums to which the true lender is entitled.

### LXXXI.

Based on Defendants' HOEPA violations, each of the Defendants is liable to the Plaintiff for the following, which Plaintiff demand as relief:

(A) rescission of the mortgage loan transactions;

(B) termination of the mortgage and security interest in the property the subject of the mortgage loan documents created in the transaction;

(C) return of any money or property paid by the Plaintiff including all payments made in connection with the transactions;

(D) an amount of money equal to twice the finance charge in connection with the transactions;

(E) relinquishment of the right to retain any proceeds; and

(F) actual damages in an amount to be determined at trial, including attorneys' fees, if one is retained by Plaintiff in the instant case.

## SIXTH CAUSE OF ACTION

### (VIOLATIONS OF FEDERAL TRUTH IN LENDING ACT)

In Plaintiff's Reply to Defendants' Motion for a More Definite Statement, Plaintiff restates his Claim for Defendants' **Violations of Federal Truth in Lending Act** in connection with the loan provided by Defendants' M&T BANK and M&T MORTGAGE CORPORATION.  This sixth Cause of Action is merely an expansion of Paragraph LXVI as complained in Plaintiff's Complaint as it relates specifically to the Act:

### LXXXII.

Allegations I. - LXXXI. are hereby incorporated into this Cause of Action.

### LXXXIII.

Defendants failed to include and disclose certain charges in the finance charge shown on the TIL statement, which charges were imposed on Plaintiff incident to the extension of credit to the Plaintiff and were required to be disclosed pursuant to 15 USC § 1605 and Regulation Z § 226.4, thus resulting in an improper disclosure of finance charges in violation of 15 USC § 1601 et seq., Regulation Z § 226.18(d). Such undisclosed charges include a sum identified on the Settlement Statement listing the amount financed which is different from the sum listed on the original Note.

### LXXXIV.

By calculating the annual percentage rate ("APR") based upon improperly calculated and disclosed amounts, Defendants are in violation of 15 USC § 1601 et seq., Regulation Z § 226.18(c), 226.18(d), and 226.22.

### LXXXV.

Plaintiff's Reply to Defendants' Motion, Page 28

Defendants' failure to provide the required disclosures provides Plaintiff with the right to rescind the transaction, and Plaintiff, through this public Complaint which is intended to be construed, for purposes of this claim, as a formal Notice of Rescission, and hereby elect to rescind the transaction.

SEVENTH CAUSE OF ACTION

**(BREACH OF FIDUCIARY DUTY)**

In Plaintiff's Reply to Defendants' Motion for a More Definite Statement, Plaintiff restates his Claim for Defendants' **Breach of Fiduciary Duty** in connection with the loan provided by Defendants' M&T BANK and M&T MORTGAGE CORPORATION.  This Claim is based on the Defendants' actions alleged in Plaintiff's First through Sixth Causes of Action Against Defendants M&T BANK and M&T MORTGAGE CORPORATION, which gives rises to the following Claims, and in furtherance of Plaintiff's claim:

LXXXVI.

Allegations I. - LXXXV. are hereby incorporated into this Cause of Action.

LXXXVII.

Defendants, by their actions in contracting to provide mortgage loan services and a loan program to Plaintiff which was not only to be best suited to the Plaintiff given their income and expenses but by which Plaintiff would also be able to satisfy their obligations without risk of losing their home, were "fiduciaries" in which Plaintiff reposed trust and confidence, especially given that Plaintiff were not and are not investment bankers, securities dealers, mortgage lenders, mortgage brokers, or mortgage lenders.

LXXXVIII.

Defendants breached their fiduciary duties to the Plaintiff by fraudulently inducing Plaintiff to enter into a mortgage transaction which was contrary to the Plaintiff's stated intentions; contrary to the Plaintiff's interests; and contrary to the Plaintiff's preservation of his home.  As a

direct and proximate result of the Defendants' breaches of their fiduciary duties, Plaintiff has suffered damages.

## LXXXIX.

Under the totality of the circumstances, the Defendants' actions were willful, wanton, intentional, and with a callous and reckless disregard for the rights of the Plaintiff justifying an award of not only actual compensatory but also exemplary punitive damages to serve as a deterrent not only as to future conduct of the named Defendants herein, but also to other persons or entities with similar inclinations.

## EIGHTH CAUSE OF ACTION

## (UNJUST ENRICHMENT)

In Plaintiff's Reply to Defendants' Motion for a More Definite Statement, Plaintiff restates his Claim for Defendants' **Unjust Enrichment** in connection with the loan provided by Defendants' M&T BANK and M&T MORTGAGE CORPORATION. This Claim is based on the Defendants' actions alleged in Plaintiff's First through Seventh Causes of Action Against Defendants M&T BANK and M&T MORTGAGE CORPORATION, which Plaintiff is informed and believes the Defendants M&T BANK and M&T MORTGAGE CORPORATION have been paid in full on the defaulted mortgage, been paid other fees and costs in connection with the loan, and under programs promulgated by the United States under passed Public Laws, which gives rises to the following Claims, and in furtherance of Plaintiff's claim:

## LC.

Allegations I. - LXXXIX. are hereby incorporated into this Cause of Action.

## LCI.

Defendants had an implied contract with the Plaintiff to ensure that Plaintiff understood all fees which would be paid to the Defendants to obtain credit on Plaintiff's behalf and to not charge any fees which were not related to the settlement of the loan and without full disclosure to Plaintiff.

## LCII.

Defendants cannot, in good conscience and equity, retain the benefits from their actions of charging a higher interest rate, fees, rebates, kickbacks, profits (including but not limited to profits from resale of mortgages and notes using Plaintiff's identity, credit score and reputation without consent, right, justification or excuse as part of an illegal enterprise scheme) and gains and YSP fee unrelated to the settlement services provided at closing.

## LCIII.

Defendants have been unjustly enriched at the expense of the Plaintiff, and maintenance of the enrichment would be contrary to the rules and principles of equity. Defendants have been additionally enriched through the receipt of PAYMENT from third parties including but not limited to investors, insurers, other borrowers, the United States Department of the Treasury, the United States Federal Reserve, and the Troubled Asset Recovery Program (Public Law 110-343) of which Defendants partook to help homeowners with loan modifications such as the herein Plaintiff.

## LCIV.

Plaintiff thus demands restitution from the Defendants in the form of actual damages, exemplary damages, and attorneys' fees, if one is employed by the Plaintiff in pursuance of the herein case.

## NINTH CAUSE OF ACTION

## (CIVIL CONSPIRACY)

In Plaintiff's Reply to Defendants' Motion for a More Definite Statement, Plaintiff restates his Claim for Defendants' **Civil Conspiracy** in connection with the loan provided by Defendants M&T BANK and M&T MORTGAGE CORPORATION. Plaintiff believes this Claim does not require a More Definite Statement:

1

## LCV.

2

Allegations I. - LCIV. are hereby incorporated into this Cause of Action.

3

## LCVI.

4

5

In connection with the application for and consummation of the mortgage loan the subject of this action, Defendants agreed, between and among themselves, to engage in actions and a course of conduct designed to further an illegal act or accomplish a legal act by unlawful means, and to commit one or more overt acts in furtherance of the conspiracy to defraud the Plaintiff.

6

7

8

## LCVII.

9

10

Defendants agreed between and among themselves to engage in the conspiracy to defraud for the common purpose of accruing economic gains for themselves at the expense of and detriment to the Plaintiff.

11

12

## LCVIII.

13

14

The actions of the Defendants were committed intentionally, willfully, wantonly, and with reckless disregard for the rights of the Plaintiff.

15

16

## LCIX.

17

18

As a direct and proximate result of the actions of the Defendants in combination resulting in fraud and breaches of fiduciary duties, Plaintiff has suffered damages.

19

## C.

20

Plaintiff thus demand an award of actual, compensatory, and punitive damages.

21

22

## TENTH CAUSE OF ACTION

## (QUIET TITLE TO REAL PROPERTY)

23

24

In Plaintiff's Reply to Defendants' Motion for a More Definite Statement, Plaintiff restates his Claim for Defendants' **Quiet Title to Real Property** in connection with the illegal foreclosure commenced thereupon the loan provided by Defendants M&T BANK and M&T MORTGAGE

25

**Plaintiff's Reply to Defendants' Motion, Page 32**

CORPORATION. Plaintiff believes this Claim does not require a More Definite Statement as Plaintiff merely prays for return of his property:

## CI.

Allegations I. - C. are hereby incorporated into this Cause of Action.

## CII.

Plaintiff has sent or has caused to be sent authorized Qualified Written Requests to the only known Defendants which the said Defendants have failed and refused to answer or follow through with agreements therein despite acknowledging receipt thereof.

## CIII.

Plaintiff has sent or has caused to be sent notice of his intent to rescind the subject loan transaction but has only sent those notices to the only entities that have been disclosed. Hence, without this action, neither the rescission nor the reconveyance which the Plaintiff is entitled to file, Plaintiff will file contemporaneously with this complaint, a lis pendens until such time title to the property is adjudicated.

## CIV.

The real party in interest on the lender side may be the owner of the asset backed security issued by the SPV, the insurer through some claim of equitable interest, or the Federal government through the United States Department of the Treasury or the Federal Reserve. The security is a "securitized" bond deriving its value from the underlying mortgages of which the subject mortgage is one. Thus Plaintiff is entitled to quiet title against Defendants, clearing title of the purported subject mortgage encumbrance.

## CV.

Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, each of the defendants sued herein

was the agent and employee of each of the remaining defendants and was at all times acting within the purpose and scope of such agency and employment.

## CVI.

Plaintiff is informed and believes and thereupon alleges that and each of the Defendants' claim or might claim an interest in the property adverse to plaintiff herein. However, the claim of said Defendants is without any right whatsoever, and said Defendants have no legal or equitable right, claim, or interest in said property.

## CVII.

Plaintiff therefore seeks a declaration that the title to the subject property is vested in Plaintiff alone and that the Defendants herein, and each of them, be declared to have no estate, right, title or interest in the subject property and that said defendants and each of them, be forever enjoined from asserting any estate, right, title or interest in the subject property adverse to Plaintiff herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendant:

1.    For an order compelling said Defendant, and each of them, to transfer or release legal title and alleged encumbrances thereon and possession of the subject property to Plaintiff herein;

2.    For a declaration and determination that Plaintiff is the rightful holder of title to the property and that Defendant herein, and each of them, be declared to have no estate, right, title or interest in said property;

3.    For a judgment forever enjoining said Defendants, and each of them, from claiming any estate, right, title or interest in the subject property; or in the alternative, an amount of $175,000.00.

4.    For costs of suit herein incurred;

**Plaintiff's Reply to Defendants' Motion, Page 34**

5.    For such other and further relief as the court may deem proper.


DATED this 26th day of March, 2010.


_____

RAYMOND N. CHACE JR., Plaintiff

1

2                        CERTIFICATE OF SERVICE

3           The undersigned Plaintiff, resident of Meridian, Idaho, 83642, certifies that on the 26th

4    day of March 2010, he caused a true and correct copy of the foregoing document by Courier, to

5    the following:

6

7
     Steven B. Anderson
8    HOLLAND AND HART LLP
     101 S. Capitol Blvd.
9    P.O. Box 2527
     Boise ID   83701-2527
10

11

12

13

14

15

16

17

18

19

20

21

22

23                                      By: _____

24                                          Ray Chace

25

Plaintiff's Reply to Defendants' Motion, Page 36